UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| **CHERYLL CLEWETT**, *on behalf of herself and others similarly situated,*<br><br>*Plaintiff*,<br><br>v.<br><br>**COVERAGE ONE INSURANCE GROUP, LLC**,<br><br>*Defendant*. | Case No.: 4:23-cv-4461<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

### NATURE OF THIS ACTION

1. This action arises out of Defendant, Coverage One Insurance Group, LLC's ("Coverage One" or "Defendant") relentless marketing practices that violate the Telephone Consumer Protection Act, 47 U.S.C. § 227, et seq. ("TCPA").

2. Coverage One is an insurance agency that provides telemarketing services for third parties, such as 1Life Healthcare, Inc. d/b/a One Medical ("One Medical").

3. On behalf of One Medical, Coverage One make aggressive unsolicited telemarketing calls soliciting the primary care physician services offered by One Medical.

4. Because Medicare is generally reserved to individuals that are 65 years of age or older, Coverage One targets America's most vulnerable population – its senior citizens.

5. Many of these calls are made to individuals (most of which are senior citizens) who have registered their telephone numbers on the National Do-Not-Call Registry – because they did not want these types of telemarketing calls.

6. Upon information and belief, One Medical instructed Coverage One (explicitly or implicitly) to use deceptive practices in making its illegal calls to conceal the illegal activities, including but not limited to falsely identifying itself as "Oak Street Health," a competitor of One

Medical.

7. The TCPA prohibits making telemarketing calls to individuals who have registered their telephone numbers on the National Do-Not-Call Registry.

8. The TCPA also prohibits falsely identifying the entity on whose behalf a telemarketing call is being made.

9. Accordingly, Plaintiff Cheryll Clewett ("Plaintiff" or "Ms. Clewett") brings this action on behalf of herself and classes of similarly situated individuals.

## Jurisdiction and Venue

10. This Court has subject matter jurisdiction under 28 U.S.C. § 1331, as this action arises under the TCPA, which is a federal statute.

11. This Court has jurisdiction over Coverage One because Coverage One purposefully availed itself of the privilege of conducting business in Texas because it obtained information about Ms. Clewett, specifically Ms. Clewett's phone number with Texas area code and a prior residential address (located in Texas) and thus *intentionally* dialed into the state of Texas.

12. Stated differently, Coverage One targeted residents of this District with its illegal telemarketing campaign and had specific knowledge (area code and zip code) that these calls were being placed into Texas. This is sufficient for specific jurisdiction. *See Pepper v. Stress Free Health Options, Inc.,* No. H-22-1251, 2022 U.S. Dist. LEXIS 150873 (S.D. Tex. Aug. 23, 2022)(two text messages sent by a Florida-based defendant to a Texas resident with a Texas area code constituted sufficient contacts for specific personal jurisdiction over the Florida-based defendant).

13. Venue is proper in this District because a substantial part of the events or omissions giving rise to Ms. Clewett's claims occurred in this District.

14. This Court also has supplemental jurisdiction over the state law claims under 28 U.S.C. § 1367(a), because they are so closely related to the federal claims that they form a single case or controversy.

### Parties

15. Plaintiff Cheryll Clewett is a natural person who at all relevant times resided in Hockley, Texas.

16. Ms. Clewett is, and at all relevant times was, a "person" as defined by 47 U.S.C. § 153(39).

17. Coverage One is a limited liability company organized and existing under the laws of the State of Florida, with headquarters located at 1451 West Cypress Creed Road, #300, Fort Lauderdale, Florida 33309.

18. Coverage One is, and at all relevant times was, a "person" as defined by 47 U.S.C. § 153(39).

### TCPA Background

19. In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry. In so doing, Congress recognized that "[u]nrestricted telemarketing . . . can be an intrusive invasion of privacy[,]" and found that federal legislation was needed because "telemarketers [could] evade [state-law] prohibitions through interstate operations.'" *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 372 (2012) (citations omitted).

20. Relevant here, the TCPA establishes a national "do not call" database of numbers not to be called. *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 FCC Rcd. 14014 ("DNC Order").

21. These regulations are codified at 47 C.F.R. §§ 64.1200(e)(1-2).

22. Specifically, a company may not initiate any "telephone solicitation" to a telephone subscriber "who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the Federal Government." 47 C.F.R. § 64.1200(c)(2).

23. A violation of 47 C.F.R. § 64.1200(c) carries statutory damages of $500 to $1,500 per call through § 227(c) of the TCPA.

24. The TCPA also specifically required the FCC to "initiate a rulemaking proceeding concerning the need to protect residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object." 47 U.S.C. § 227(c)(1).

25. The FCC was instructed to "compare and evaluate alternative methods and procedures (including the use of … company-specific do not call systems …)" and "develop proposed regulations to implement the methods and procedures that the Commission determines are most effective and efficient to accomplish purposes of this section." *Id.*

26. These regulations are codified at 47 C.F.R. § 64.1200(d)(1)-(7).

27. These regulations require a company to keep a written policy, available upon demand, for maintaining a do-not-call list, train personnel engaged in telemarketing on the existence and use of its internal do-not-call list, and record and honor "do not call" requests for no less than five years from the time the request is made. 47 C.F.R. § 64.1200(d) (1, 2, 3, 6).

28. These regulations also require persons or entities making telemarketing calls to accurately provide "the called party with the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted." 47 C.F.R. § 64.1200(d)(4).

29. These policies and procedures prohibit a company from making calls for

telemarketing purposes[1] unless they have implemented these policies and procedures. 47 C.F.R. § 64.1200(d).

30.     Accordingly, all telemarketing calls violate the TCPA, unless Defendant can demonstrate that it has implemented the required policies and procedures.

31.     There is a private right of action to enforce 47 C.F.R. § 64.1200(d) through § 227(c):

> Section 227(c)(5)… empowers 'any person' to sue for damages and injunctive relief for do-not-call violations 'by or on behalf of' a company. In accordance with this statutory provision, the Commission's company-specific do-not-call rules provide that '[n]o person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity[.]' 47 C.F.R. § 64.1200(d).

*In re Dish Network*, 28 FCC. Rcd. 6574, ¶ 29 (2013)

32.     These requirements are separate but cumulative. In other words, a company must comply with both the 64.1200(d) regulations *and* the procedures for complying with the national "do not call" database regulations. A failure to comply with either is distinct a violation of 47 U.S.C. § 227(c).

33.     Though some of these requirements mention "residential" telephones, they were all extended to cover calls to cellular telephones that are used for residential purposes. 47 CFR §

---

[1] The distinction between the use of "telephone solicitation" in relation to the national do-not-call database and calls for "telemarketing purposes" in relation to the company-specific do-not-call list is significant. "Telephone solicitation" excludes calls made to a person with whom the company has as established business relationship, 47 CFR 64.1200(f)(14), which can be established by a "voluntary two-way communication". 47 CFR 64.1200(f)(5). But this business relationship can be terminated by a "do not call" request. 47 CFR 64.1200(f)(5)(i). "Telemarketing purposes", on the other hand, includes any calls made for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, regardless of any consent or established business relationship. 47 CFR 64.1200(f)(12). In other words, prior to making any telemarketing calls to anyone, regardless of relationship, a company must implement the company-specific do-not-call regulations, but it only need to comply with the national do-not-call registry provisions with respect to persons with whom it does not have an existing established business relationship.

64.1200(e).

34. Further, a person or entity can be liable for calls made on its behalf in violation of the TCPA, even if that person or entity did not directly dial such calls. *See, e.g., In re Rules & Regs. Implementing the TCPA*, 10 FCC Rcd. 12391, 12397 ¶ 13 (1995) (explaining that the FCC's "rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any [TCPA] violations"). In fact, in May 2013, the FCC issued a binding declaratory ruling clarifying that sellers "may be held vicariously liable under federal common law principles of agency for TCPA violations committed by third-party telemarketers . . . under a broad range of agency principles, including not only formal agency, but also principles of apparent authority and ratification." *In re Joint Petition Filed by DISH Network, LLC et al. for Declaratory Ruling Concerning the TCPA Rules*, 28 FCC Rcd. 6574, 6584 ¶28 (2013).

35. Accordingly, an entity can be liable under the TCPA for a prohibited call made on its behalf under a number of theories including vicarious liability. Under those circumstances, the seller is properly deemed to have initiated the call through the person or entity that actually placed the call.

36. Section 302.101 of the Texas Business & Commerce Code prohibits sellers from engaging in telephone solicitation from a location in this state or to a purchaser located in this state unless the seller obtains a registration certificate from the Office of the Secretary of State for the business location from which the solicitation is made.

37. Sellers engaging in telephone solicitations are required to register, and among other things, list "each telephone number to be used by the seller and the address where each telephone using the number is located." §302.151(10).

38. Section 302.302(a) of the Texas Business & Commerce Code provides that a person

who violates this chapter is subject to a civil penalty of no more than $5,000 for each violation. Furthermore, section 302.302(d) provides that the party bringing the action is also entitled to recover all reasonable cost of prosecuting the action, including court costs and investigation costs, deposition expenses, witness fees, and attorneys' fees.

## Factual Allegations

39. Ms. Clewett is the sole and customary user of a cellular telephone number (XXX)-XXX-6727.

40. Ms. Clewett's cellular telephone number (XXX)-XXX-6727 is used for residential purposes and is not associated with a business.

41. Ms. Clewett's cellular telephone number has a Texas area code.

42. Ms. Clewett's cellular telephone number (XXX)-XXX-6727 has been on the National Do-Not-Call Registry since February 2, 2012.

43. Ms. Clewett personally placed her cellular telephone number (XXX)-XXX-6727 on the National Do-Not-Call Registry because she did not want unsolicited telemarketing calls or texts, such as the ones at issue here.

44. On or about July 13, 2023, Ms. Clewett began receiving telephone calls from Coverage One. The calls were made by Coverage One on behalf of One Medical.

45. Coverage One is one of One Medical's telesales vendors.

46. One Medical outsourced the act of executing the unlawful calls to Coverage One.

47. One Medical authorized and directed Coverage One to promote One Medical's services in accordance with specifications largely dictated by One Medical. Discovery will uncover the written agreement between One Medical and Coverage One.

48. Via the agreement between One Medical and Coverage One, One Medical made

Coverage One an authorized agent of One Medical – expressly or impliedly – to execute unlawful calls to Ms. Clewett and the class members. Again, discovery will uncover the specifics of the agreement.

49. One Medical allowed Coverage One access to One Medical's information and systems when making calls so that transfers would appear seamless between the two parties.

50. One Medical integrated its systems with Coverage One's through a third-party technology platform so that One Medical and Coverage One could easily and quickly share information about potential leads.

51. The first call Ms. Clewett received from Coverage One occurred on July 13, 2023 and came from (832) 333-1797.

52. Prior to this call, Ms. Clewett had no business relationship with Coverage One.

53. Prior to this call, Ms. Clewett never directly contacted Coverage One.

54. Prior to this call, Ms. Clewett had never heard of Coverage One.

55. During the first call, Coverage One's telemarketer identified herself as "Phoebe" and stated she was calling from "Oak Street Health."[2]

56. This was false.

57. Phoebe was calling from Coverage One on behalf of One Medical to solicit One Medical's services.

58. Upon information and belief, One Medical instructed Coverage One to use the name "Oak Street Health" to conceal the true identity of those behind the calls and avoid their illegal activity from being tracked back to One Medical and Coverage One.

59. Coverage One's telemarketer attempted to solicit Ms. Clewett with physician

---

[2] Oak Street Health is a competitor of One Medical.

services.

60. Ms. Clewett asked Coverage One's telemarketer how the telemarketer obtained her telephone number.

61. The telemarketer stated, "um, actually its' in the autodialer."

62. Ms. Clewett engaged with Coverage One's telemarketer in an attempt to identify the true identity of the telemarketer.

63. Ms. Clewett asked Coverage One's telemarketer to identify their company website.

64. Coverage One's telemarketer refused and told Ms. Clewett to instead search for "Oak Street Health" on the internet.

65. Ms. Clewett asked Coverage One's telemarketer for a call back number.

66. Coverage One's telemarketer refused to provide one and stated she would call Ms. Clewett back at another time.

67. Ms. Clewett then asked Coverage One's telemarketer what the call was about, and Coverage One's telemarketer began her pitch regarding an "exclusive opportunity" to experience "top quality healthcare with a focus on value-based care."

68. One Medical uses the terminology "value-based care" to market its services.[3]

69. Upon information and belief, One Medical instructs Coverage One to use that specific terminology in Coverage One's telesales scripts when cold calling consumers, like Ms. Clewett.

70. After asking some questions about Ms. Clewett's medical insurance, Coverage

---

[3] *See* https://www.onemedical.com/practice-integration/ ("We take on full-risk contracts to provide value-based care for seniors on Medicare and support the providers that serve them.") (last accessed Nov. 16 2023); https://www.onemedical.com/blog/newsworthy/modernizing-health-care-one-medical-goes-public-advance-its-mission/ ("We partner with leading health networks across the nation to deliver more coordinated and accessible value-based care.") (last accessed Nov. 16, 2023).

One's telemarketer abruptly stated that the "offer" she was calling about was not available in Ms. Clewett's zip code.

71. At that point, Ms. Clewett had not provided her zip code to Coverage One's telemarketer.

72. Ms. Clewett asked Coverage One's telemarketer how the telemarketer knew what her zip code was.

73. Coverage One's telemarketer explained that it was in the autodialer.

74. Ms. Clewett asked Coverage One's telemarketer to identify the zip code in the autodialer.

75. The telemarketer recited an inaccurate zip code located in Texas.

76. Ms. Clewett informed Coverage One's telemarketer the zip code was incorrect and provided her correct zip code.

77. After a period of silence, Coverage One's telemarketer again stated that the "offer" was not available in her zip code.

78. Ms. Clewett then asked Coverage One's telemarketer why the telemarketer would call her about something that is not even available in her area.

79. Coverage One's telemarketer responded, "because I can't even control it because its an autodialer, Cheryll."

80. Upon information and belief, Coverage One obtains lead information (in accordance with parameters set by One Medical), inputs that information into its autodialer system, and cold calls as many potential leads as possible to identify individuals that might be interested in One Medical's services.

81. Upon information and belief, Coverage One receives a commission for each lead

that is successfully provided to One Medical or that signed up with One Medical.

82. On or about July 18, 2023, Ms. Clewett received another call from Coverage One on behalf of One Medical.

83. This call came from (832) 333-1542.

84. Coverage One's telemarketer identified herself as "Liz" and stated she was calling from "Oak Street Health."

85. Coverage One's telemarketer began her script, which was nearly identical to the script Phoebe used.

86. Ms. Clewett engaged with Coverage One's telemarketer in an attempt to identify the true identity of the telemarketer.

87. Coverage One's telemarketer transferred Ms. Clewett to One Medical.

88. Ms. Clewett spoke with a representative of One Medical.

89. The One Medical representative explained One Medical is a primary care doctor's office for seniors.

90. The One Medical representative explained that their agents and partners refer individuals to them.

91. The One Medical representative asked if Ms. Clewett called in or if she was called.

92. Ms. Clewett advised that she was called.

93. The One Medical representative explained that the call came through its software platform, SunFire, that it operates with its telesales vendors, like Coverage One.

94. The One Medical representative apologized and stated that it was supposed to be a warm transfer so that the One Medical representative is aware of what is "going on."

95. The One Medical representative then began to solicit Ms. Clewett.

96. Ms. Clewett asked how she got transferred to One Medical.

97. The One Medical representative advised that One Medical's internal system showed the call came through "SunFire"[4] from its telesales vendor and partner Coverage One.

98. Ms. Clewett did not provide prior express invitation or permission or consent for these telephone calls.

99. Coverage One did not have the required policies or procedures at the time of the calls it made to Ms. Clewett and the classes defined below.

100. Alternatively, whatever written policies existed either failed to comply with the minimum requirements under the TCPA, 47 C.F.R. § 64.1200(d), or were never properly implemented—including as evidenced by the use of false identification during the telephone calls to Ms. Clewett.

101. Coverage One's violations were negligent.

102. Alternatively, Coverage One's violations were willful and knowing.

103. Ms. Clewett and the classes were damaged by the violations alleged herein. Their privacy was improperly invaded, Coverage One's calls temporarily seized and trespassed upon the use of their phones, and/or they were forced to divert attention away from other activities to address the unwanted telephone calls. Coverage One's telephone calls were annoying and a nuisance, and wasted the time of Ms. Clewett and the class members. *See, e.g., Mims,* 565 U.S. at 372 (discussing congressional findings of consumer "outrage" as to prerecorded calls).

104. Coverage One is not registered as a solicitor with the Texas Secretary of State.

## DEFENDANT'S LIABILITY

---

[4] Upon information and belief, Sunfire is a technology platform utilized by One Medical and its telesales partners that provides the users, which may insurance agents/brokers, with various Medicare related enrollment tools and information as well as a platform to make and record cold calls. *See* https://www.sunfireinc.com/what-we-do/ (last accessed August 21, 2023).

105. Coverage One used automated systems to make outbound telephonic sales calls to hundreds if not thousands of consumers across the U.S., including to consumers whose phone numbers are listed on the National Do-Not Call Registry.

106. Because Coverage One directly initiated the unlawful calls to Plaintiff and Class members, Coverage One is directly liable for violating the TCPA.

107. All of the calls alleged herein were made to Plaintiff and Class members on behalf of One Medical order to drive them to One Medical for the purpose of signing up with One Medical.

108. Coverage One made two or more telephone solicitations to Ms. Clewett, whose number was on the National Do-Not-Call Registry at the time of the telephone calls. This constitutes a violation of 47 U.S.C. § 227(c) through 47 C.F.R. § 64.1200(c).

109. Accordingly, for violations of 47 C.F.R. § 64.1200(c), Ms. Clewett is entitled to $500 per call through 47 U.S.C. § 227(c).

110. Ms. Clewett is entitled to $1,500 per call if the actions are found to be knowing or willful.

111. Coverage One placed two or more telemarketing calls to Ms. Clewett, despite not having in place the required policies and procedures prior to making such calls. This constitutes a violation of 47 U.S.C. § 227(c) through 47 C.F.R. § 64.6200(d).

112. Coverage One's lack of policies and procedures is evidenced by its use of deceptive practices to conceal it and One Medical's identity.

113. Accordingly, for violations of 47 C.F.R. § 64.1200(d), Ms. Clewett is entitled to $500 per call through 47 U.S.C. § 227(c).

114. Ms. Clewett is entitled to $1,500 per call if the actions are found to be knowing or

willful.

## CLASS ACTION ALLEGATIONS

115. Ms. Clewett brings this action under Fed. R. Civ. P. 23 on behalf of two proposed "Classes," as defined as follows:

### THE TCPA CLASSES

Plaintiff and all persons within the United States to whose telephone number Coverage One placed (on behalf of One Medical) two or more telemarketing calls in a 12-month period when the telephone number to which the telephone calls were made was on the National Do-Not-Call Registry for more than 30 days at the time of the calls from four (4) years prior to the filing of the Complaint.

("Registry Class")

Plaintiff and all persons within the United States whose telephone number Coverage One placed (on behalf of One Medical) two or more telemarketing calls in a 12-month period from four (4) years prior to the filing of the Complaint.

("Policy Class").

Plaintiff and all residents of the State of Texas to whose telephone number Defendant placed (or had placed on its behalf) a telephone solicitation when Defendant from four (4) years prior to the filing of the Complaint.

(Texas § 302.101 Class).

(The Registry Class, the Policy Class and the Texas § 302.101 Class are collectively referred to herein as the "Classes.")

116. Excluded from the Classes are Defendant and any entities in which Defendant has a controlling interest; Defendant's agents and employees; any Judge and Magistrate Judge to whom this action is assigned and any member of their staffs and immediate families, and any claims for personal injury, wrongful death, and/or emotional distress.

117. The Members of the Classes for whose benefit this action is brought are so numerous that joinder of all members is impracticable.

118. The exact number and identities of the persons who fit within the Classes are ascertainable in that Defendant and third parties maintain written and electronically stored data showing:

- The time period(s) during which Defendant made the telephone calls;
- The telephone numbers to which Defendant made telephone calls;
- The telephone numbers for which Defendant had prior express written consent;
- The purposes of such telephone calls; and
- The names and addresses of Class members.

119. The Classes are comprised of hundreds, if not thousands, of individuals.

120. There are common questions of law and fact affecting the rights of the Members of the Classes, including, *inter alia*, the following:

- Whether Defendant makes telemarketing calls;
- Whether Defendant obtains prior express written consent;
- Whether Defendant makes solicitation calls and to telephone numbers registered on the National Do-Not-Call Registry;
- Whether Defendant had the required policies and procedures prior to making telemarketing calls;
- Whether Defendant's statutory violations were willful and knowing; and
- Whether Defendant should be enjoined from engaging in such conduct in the future.

121. Plaintiff is a member of the Classes in that Defendant placed two or more calls for telemarketing purposes, in a one-year period to her telephone number, without her prior express written consent, and while her telephone number was on the National Do-Not-Call Registry.

122. Plaintiff's claims are typical of the claims of the Members of the Classes in that they arise from Defendant's uniform conduct and are based on the same legal theories as these claims.

123. Plaintiff and all putative Members of the Classes have also necessarily suffered concrete harm in addition to statutory damages, as all Members of the Classes spent time tending to Defendant's unwanted calls and suffered a nuisance and an invasion of their privacy.

124. Plaintiff has no interests antagonistic to, or in conflict with, the Classes.

125. Plaintiff will thoroughly and adequately protect the interests of the Classes, having retained qualified and competent legal counsel to represent her and the Classes.

126. Defendant has acted and refused to act on grounds generally applicable to the Classes, thereby making injunctive and declaratory relief appropriate for the Classes.

127. The prosecution of separate actions by individual class members would create a risk of inconsistent or varying adjudications.

128. A class action is superior to other available methods for the fair and efficient adjudication of the controversy since, *inter alia*, the damages suffered by each class member make individual actions uneconomical.

129. Common questions will predominate, and there will be no unusual manageability issues.

**FIRST CAUSE OF ACTION**
**Violations of the TCPA, 47 U.S.C. § 227(c)**
**(On Behalf of Plaintiff and the Registry Class)**

130.   Plaintiff and the proposed Registry Class incorporate the allegations of paragraphs 1-124 as if fully set forth herein.

131.   Defendant made telephone solicitations to Plaintiff's and putative Registry Class Members' telephone numbers.

132.   Plaintiff's and putative Registry Class Members' telephone numbers were all on the National Do-Not-Call Registry at the time of the calls.

133.   Plaintiff and putative Registry Class Members each received two or more such calls in a 12-month period.

134.   Plaintiff and putative Registry Class Members are entitled to an award of $500 in statutory damages for each telephone solicitation call pursuant to 47 U.S.C. § 227(c)(5).

135.   Plaintiff and putative Registry Class Members are entitled to an award of treble damages in an amount up to $1,500 for each telephone solicitation call made knowingly and/or willfully, pursuant to 47 U.S.C. § 227(c)(5).

**SECOND CAUSE OF ACTION**
**Violations of the TCPA, 47 U.S.C. § 227(c)**
**(On behalf of Plaintiff and the Policy Class)**

136.   Plaintiff and the proposed Policy Class incorporate the allegations of paragraphs 1-124 as if fully set forth herein.

137.   Defendant made numerous telephone calls for telemarketing purposes to Plaintiff's and putative Policy Class Members' telephone numbers.

138.   Defendant did so despite not having a written policy as required by the TCPA.

139. Defendant misrepresented its identity to conceal the illegal conduct.

140. Defendant did so despite not training its personnel on the TCPA's identification requirements.

141. Defendant made two or more telemarketing calls to Plaintiff and putative Policy Class Members' telephone numbers in a 12-month period.

142. Plaintiff and putative Policy Class Members are entitled to an award of $500 in statutory damages telephone call pursuant to 47 U.S.C. § 227(c)(5).

143. Plaintiff and putative Policy Class Members are entitled to an award of treble damages in an amount up to $1,500 telephone call, pursuant to 47 U.S.C. § 227(c)(5).

### THIRD CAUSE OF ACTION
### Violations of Texas Business and Commerce Code, § 302.101
### (On Behalf of Plaintiff and the Texas § 302.101 Class)

144. Plaintiff incorporates the foregoing allegations as if fully set forth herein.

145. Defendant failed to obtain a registration certificate from the Office of the Secretary of State of Texas pursuant to § 302.101 of the Texas Business and Commerce Code.

146. Defendant placed telephone solicitations to Plaintiff's and the Texas § 302.101 Class Members' telephone numbers.

147. Defendant's telephone solicitations were made from a location in Texas or to Plaintiff and the Texas § 302.101 Class Members located in Texas.

148. Plaintiff and the Texas § 302.101 Class Members are entitled to an award of up to $5,000 for each violation and all reasonable cost of prosecuting the action, including court costs and investigation costs, deposition expenses, witness fees, and attorney's fees.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of the Classes, prays for the following relief:

A.  An order certifying the Classes as defined above, appointing Plaintiff as the representatives of the Classes and appointing her counsel as Class Counsel;

B.  An order declaring that Defendant's actions, as set out above, violate the statutes referenced herein;

C.  An award of injunctive and other equitable relief as necessary to protect the interests of the Classes, including, *inter alia*, an order prohibiting Defendant from engaging in the wrongful and unlawful acts described herein;

D.  An award of statutory damages;

E.  An award of treble damages; and

F.  Such other and further relief that the Court deems reasonable and just.

### Demand for Jury Trial

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury of any and all triable issues.

Dated: November 28, 2023.

By:    */s/ Chris R. Miltenberger*
     Chris R. Miltenberger
     Texas Bar Number: 14171200

**The Law Office of Chris R. Miltenberger, PLLC**
1360 N. White Chapel, Suite 200
Southlake, Texas 76092-4322
817-416-5060 (office)
817-416-5062 (fax)
chris@crmlawpractice.com

Max S. Morgan, Esquire
THE WEITZ FIRM, LLC
1515 Market Street, #1100
Philadelphia, PA 19102
Tel: (267) 587-6240
Fax: (215) 689-0875
max.morgan@theweitzfirm.com

Counsel for Plaintiff and
the proposed classes